UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ERNEST REYNOLDS, et al. | ) | CASE NO. 5:10CV01644 |
| | ) | |
| Plaintiffs, | ) | MAGISTRATE JUDGE GEORGE J. |
| | ) | LIMBERT |
| v. | ) | |
| | ) | MEMORANDUM OPINION AND ORDER |
| CALVIN GRAHAM, et al., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on the motion for partial summary judgment filed on behalf of Defendants, Calvin Graham, Robert (Troy) Watson, Ronald Clapper, all of whom are Carroll County Sheriff Deputies, as well as other unnamed Carroll County Sheriff Deputies, and the Carroll County Sheriff Department on May 23, 2011. ECF Dkt. #28. With leave of this Court, Plaintiffs, Ernest Reynolds, Joseph Dalton, and Jimmy Shaw filed their response to the motion for partial summary judgment on July 22, 2011. ECF Dkt. #31. Defendants filed a reply brief on July 28, 2011. ECF Dkt. #32.

According to the Complaint, Plaintiffs broke into a residence at 5203 Eagle Road in Carroll County, Ohio on July 27, 2009. Watson pulled into the driveway of 5203 Eagle Road in an unmarked Carroll County Sheriff's Department vehicle, thereby blocking Plaintiffs' vehicle, which was parked in the center of the two-car garage. Plaintiffs allege that, as they fled the scene, Watson fired multiple gun shots at their vehicle without first identifying himself as a Sheriff's deputy. After

Plaintiff's vehicle became disabled approximately four blocks from 5203 Eagle Road, Shaw and Dalton were apprehended. During their arrest, Plaintiffs allege that Graham beat Shaw. Reynolds escaped and remained at large for approximately five hours. Graham discovered Reynolds walking along State Route 39. The Complaint reads, "Defendant Clapper came upon Defendant Graham parked in the middle of the road and Defendant Graham and Plaintiff Reynolds were wrestling in the driver's seat." ECF Dkt. #1 at p. 4.[1] Then, when Reynolds escaped for a second time into a nearby field, Clapper shot Reynolds, who was not armed, twice from behind.

In Count One, Plaintiffs assert three incidents of excessive force in violation of the Fourth Amendment pursuant to 42 U.S.C. §1983: Watson firing his gun at Plaintiffs' vehicle at 5203 Eagle Road, Graham beating Shaw during his arrest, and Clapper shooting Reynolds twice from behind. In Count Two, Plaintiffs assert municipal liability claims against the County.[2] In Count Three, Plaintiffs assert a common law battery claim against all three of the named defendants. In Count Four, Plaintiffs assert a claim for gross negligence or willful and wanton misconduct against all three of the named defendants.

In the partial motion for summary judgment, Defendants assert that Watson is immune from suit with respect to firing his gun at Plaintiffs' vehicle, because Plaintiffs were not "seized," as that term has been defined by federal law. Defendants further assert that Clapper is immune from suit because he used reasonable force to prevent Reynolds, a dangerous fugitive, from escaping from

---

[1] Page numbers refer to the PageID# in the electronic filing system.

[2] The municipal liability claims are asserted by "Plaintiff." As a consequence, it is not clear from the complaint whether the municipal liability claims are asserted on behalf of all of the plaintiffs, or just on of them.

custody.³ Finally, they argue that Plaintiff has not produced any evidence of municipal liability on the part of the Carroll County Sheriff Department. In addition to seeking summary judgment on the 42 U.S.C. 1983 claims, Defendants also ask this Court to enter summary judgment on the state claims in Counts Three and Four. Because Defendants did not offer any analysis of the state law claims in their briefs, this Court will not consider the motion as it relates to Counts Three and Four. For the following reasons, Defendants' partial motion for summary judgment is granted with respect to the 42 U.S.C. 1983 claims stated in the first and third claims in Count One and the claims in Count Two as they relate to the first and third claims in Count One.

I.    STANDARD OF REVIEW AND GOVERNING LAW

Defendants have moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Summary judgment should be granted "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed.R.Civ.P. 56(c).

---

³Defendants have not asserted qualified immunity with respect to Graham's alleged beating of Shaw, which is asserted in the second claim in Count One.

This Court must view evidence in the light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *CenTra, Inc. v. Estrin*, 538 F.3d 402, 412 (6th Cir.2008). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Daugherty v. Sajar Plastics*, Inc., 544 F.3d 696, 702 (6th Cir.2008). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases, the Court will decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

Upon filing a motion for summary judgment, the moving party has the initial burden of establishing that there are no genuine issues of material fact as to an essential element of the nonmoving party's claim. *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir.2009) (citation omitted); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 & n. 12 (6th Cir.1989). The moving party, however, is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the moving party relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In response, if the moving party establishes the absence of a genuine issue of material fact, to defeat summary judgment, the non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e)(2); see also *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89

4

L.Ed.2d 538 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir.2009) (citation omitted). In this regard, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment"; rather, "Rule 56 allocates that duty to the opponent of the motion, who is required to point out the evidence, albeit evidence that is already in the record, that creates an issue of fact." *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 379–80 (6th Cir.2007) (citation omitted); see also *Tucker v. Tennessee*, 539 F.3d 526, 531 (6th Cir.2008)(citation omitted). Moreover, the non-moving party must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Matsushita Elec. Indus. Co.*, 475 U.S. at 586–87, 106 S.Ct. 1348; see also *Barr v. Lafon*, 538 F.3d 554, 574 (6th Cir.2008).

Accordingly, the ultimate inquiry is whether the record, as a whole, and upon viewing it in the light most favorable to the non-moving party, could lead a rational trier of fact to find in favor of the non-moving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 586–87, 106 S.Ct. 1348; see also Anderson, 477 U.S. at 252, 106 S.Ct. 2505 ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict—whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." (emphasis in original) (internal quotations omitted)).

Under 42 U.S.C. § 1983, an individual may bring a private right of action against anyone, who, under color of state law, deprives a person of rights, privileges, or immunities secured by the Constitution or conferred by federal statutes. *Blessing v. Freestone*, 520 U.S. 329, 340, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997); *Maine v. Thiboutot*, 448 U.S. 1, 4, 100 S.Ct. 2502, 65 L.Ed.2d 555

(1980). Generally, summary judgment based on qualified immunity is proper if the officer was not on notice that his conduct was clearly unlawful. *Higgason v. Stephens*, 288 F.3d 868, 876 (6th Cir.2002). However, if genuine issues of material fact exist as to whether the officer committed acts that would violate a clearly established right, then summary judgment is improper. *Poe v. Haydon*, 853 F.2d 418, 425–26 (6th Cir.1988).

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation[.]" *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). "Through the use of qualified immunity, the law shields 'government officials performing discretionary functions ... from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Solomon v. Auburn Hills Police Dep't*, 389 F.3d 167, 172 (6th Cir.2004) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). Once raised, the plaintiff bears the burden of showing that a defendant is not entitled to qualified immunity. *Ciminillo v. Streicher*, 434 F.3d 461, 466 (6th Cir.2006).

In determining whether a defendant is entitled to qualified immunity, the court makes two inquiries: (1) "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right[,]" and (2) was the right "clearly established" to the extent that a reasonable person in the officer's position would know that the conduct complained of was unlawful. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), overruled on other grounds by *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009). Although *Saucier* mandated that these questions be addressed in order, that requirement has since been relaxed. See *Pearson*, 129 S.Ct. at 818 ("On reconsidering

6

the procedure required in *Saucier*, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory.").

With regard to the second step,

[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 640 (citations omitted); see *Walton v. City of Southfield*, 995 F.2d 1331, 1336 (6th Cir.1993) (quoting *Daugherty v. Campbell*, 935 F.2d 780, 784 (6th Cir.1991) ("In inquiring whether a constitutional right is clearly established, we must 'look first to decisions of the Supreme Court, then to decisions of this court and other courts within our circuit, and finally to decisions of other circuits.' ")). "This standard requires the courts to examine the asserted right at a relatively high level of specificity[,]" and "on a fact-specific, case-by-case basis[.]" *Cope v. Heltsley*, 128 F.3d 452, 458–59 (6th Cir.1997) (citations and internal quotation marks omitted).

## II. FACTS

The following facts are taken from the affidavits of Graham and Clapper, which are attached to the motion for partial summary judgment. Plaintiffs offered no evidence in support of their response brief. As a consequence, the only evidence before the Court for the purpose of resolving the motion for partial summary judgment are the affidavits offered by Defendants.

Graham attests that he was "involved in the arrests on July 27, 2009 of Plaintiffs following their commission of a felony theft crime at 5203 Eagle Road in Carroll County," and that he and Sgt. Ellington of the Carrollton Police Department "took Dalton and Shaw into custody shortly after they

were discovered in the commission of the crime and fled." ECF Dkt. # 28-1, p. 181, Graham Aff. at 3-4.

With respect to Reynolds' arrest, Graham attests that Reynolds was at large for approximately five hours and that other members of the Carroll County Sheriff's Department, city police, and state highway patrol were searching for him. Graham's cruiser was parked on State Route 39, when a motorist pulled up to the cruiser and told Graham that a man was standing on the roadway not far from where he was parked attempting to flag down vehicles. Graham radioed the Sheriff's Office because he suspected that the man was Reynolds. He did not wait for back-up because he feared that Reynolds intended to carjack an unsuspecting motorist. Graham approached Reynolds on foot, and when he attempted to arrest him, Reynolds struggled to escape. Graham writes:

> I escorted Reynolds back to the cruiser with some difficulty. Almost immediately, he began fighting to get away. Reynolds ended up in the driver's seat of the cruiser. I was standing on the driver's side running board, with the driver's side door open, trying to get him under control and extract him from the vehicle when Sgt. Clapper came up and joined in the fray. Reynolds was fighting both of us. At the time I was 6'2 and 200 lbs. Even though we had him outnumbered and outsized, Reynolds continued to fight to escape arrest. At some point during his wrestling with Sgt. Clapper and me, Reynolds began reaching for my gun belt. I had to turn at an angle away from Reynolds to keep him from reaching my gun. With Reynolds in the driver's seat, feet on the floorboards, the cruiser was started, engaged in drive, and began moving down State Route 39. Sgt. Clapper and I steered the vehicle toward a drainage ditch on the side of the roadway. The cruiser came to a stop when it hit a utility pole guide wire. I hit my head on an overhead switch mechanism near the driver's sun visor. The mechanism cut my head, causing a gash that required nine (9) staples to close. As the cruiser came to a rest, Reynolds attempted to escape through the passenger side window. Sgt. Clapper grabbed for him, but could not subdue Reynolds. As Reynolds exited through the passenger side window, Sgt. Clapper stepped down from the driver's side running board and ran to the back of the cruiser. Sgt. Clapper immediately warned Reynolds, who was running way [sic] across a field and toward a nearby residence, to stop. When Reynolds did not heed Sgt. Clapper's warning to stop or he would shoot, I instructed Sgt. Clapper to shoot. He did so.

8

ECF Dkt. #28-1, Graham Aff. ¶10-16.

According to Clapper's affidavit, he was involved in Reynolds' apprehension and arrest on July 27, 2009. He heard Graham on the radio report his intent to investigate a suspicious person seen on State Route 39, and headed toward the area. When Clapper found Graham's cruiser, he radioed the Sheriff's Department that he was on the scene. There were already a couple of cars stopped on the road. Clapper approached the cruiser and found Graham wrestling with Reynolds, who was in the driver's seat. Clapper attempted to assist Graham in subduing Reynolds, but Reynolds continued to attempt to escape. At some point, Clapper became aware that Reynolds had disarmed Graham by removing his gun belt, which fell onto the road. As the fight continued, the cruiser began to roll down State Route 39. Clapper writes:

> Because I was aware that there were cars stopped in the roadway by the ongoing incident, I became concerned about the possibility of an accident. Lt. Graham and I steered the cruiser toward the right side of the road, where it crashed into a drainage ditch and utility pole guide wire. Reynolds began scrambling toward the passenger side window. I grabbed his feet, but he kicked me in the chest and escaped through the window. I ran around to the back of the cruiser while unholstering my gun, and yelled to Reynolds twice in a row, "stop or I'll shoot." Reynolds continued running through a field and toward a house set back from the roadway. When he failed to stop, I asked Lt. Graham whether I should shoot he said yes. I immediately fired two shots in rapid succession. Reynolds stumbled. I waited to see whether he would stay down. Reynolds got back on his feet and started running again. I shot a third time. Reynolds went down and stayed down. At 5:23:06 p.m., exactly one minute and six seconds after I first arrived on the scene of Reynolds' altercation with Lt. Graham, I radioed for an ambulance to provide emergency care to Reynolds. At the time I fired on Reynolds, I was concerned that Reynolds, having already fought off two (2) larger men, and having disarmed one of them in the fight, would do and could do almost anything to escape arrest. There were drivers, some with passengers, stopped within feet of where Reynolds escaped arrest, any one of whom Reynolds could have carjacked, injured, and/or taken hostage. There were houses in the immediate area, any one of which Reynolds could have broken into and, if residents were home, caused injury and/or taken hostage. I was aware that Lt. Graham's head was

9

>bleeding. I sustained a road-rash[4] type injury to my head as well as a kick to the chest. I believed that Reynolds was willing and able to hurt others in his effort to avoid arrest and that there were many innocent members of the public close at hand.

ECF Dkt. #28-2, Clapper Aff. at ¶10-16.

III. <u>LAW AND ANALYSIS</u>

A. <u>WATSON FIRING HIS GUN AT PLAINTIFFS' VEHICLE</u>

The "safeguards of the Fourth Amendment, with respect to police/citizen contact, vest only after a citizen has been seized." *Smoak v. Hall*, 460 F.3d 768, 778 (6th Cir.2006) (citation and internal quotation marks omitted). A seizure occurs when, "in view of all the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). "Circumstances indicative of a seizure include 'the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.'" *United States v. Jones*, 562 F.3d 768, 772 (6th Cir.2009) (quoting *Mendenhall*, 446 U.S. at 554).

With respect to Plaintiffs' first claim in Count One, there is no evidence on the record establishing the facts underlying the claim. Watson's affidavit establishes that he was "involved in the arrests on July 27, 2009 of Plaintiffs following their commission of a felony theft crime at 5203 Eagle Road in Carroll County," and that he and Sgt. Ellington of the Carrollton Police Department "took Dalton and Shaw into custody shortly after they were discovered in the commission of the crime and fled." ECF Dkt. # 28-1, p. 181, Graham Aff. at 3-4. There is no evidence that Watson

---

[4]"Road-rash" is defined as "grazing of the skin as a result of falling off a bicycle, skateboard, etc, onto a hard surface." See www.dictionary.com.

10

was in an unmarked car, failed to identify himself, or shot at Plaintiff's vehicle. Plaintiffs have failed to meet their evidentiary burden on this claim, and, therefore, Defendant's motion for summary judgment on the basis of qualified immunity is granted on the first claim in Count One. Furthermore, because Plaintiffs' have failed to demonstrate a violation of their constitutional rights in the first claim in Count One, their municipal liability claim against the County, as it related to the first claim in Count One, must also be dismissed. See *Tucker v. City of Richmond, Ky.*, 388 F.3d 216, 224 (6th Cir.2004)("there can be no municipal liability under section 1983 for [unconstitutional conduct] when no [constitutional violation] has actually occurred.").

### B. CLAPPER TWICE SHOOTING REYNOLDS FROM BEHIND

It is well-established that individuals have a constitutional right to be free from excessive force during an arrest. See, e.g., *Graham v. Connor*, 490 U.S. 386, 388, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). "[A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard. . . ." *Graham*, 490 U.S. at 395, 109 S.Ct. 1865.

"[T]he Fourth Amendment prohibits a police officer's use of deadly force to seize an unarmed, non-dangerous suspect." *Sample v. Bailey*, 409 F.3d 689, 696 (6th Cir.2005) (citing *Tennessee v. Garner*, 471 U.S. 1, 11, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)). Rather, the use of deadly force is only constitutionally permissible if "the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others. . . ." *Garner*, 471 U.S. at 11, 105 S.Ct. 1694; see also *Sample*, 409 F.3d at 697 (noting that "only in rare instances may an officer seize a suspect by use of deadly force"). The Court has identified three factors that

11

lower courts should consider in determining the reasonableness of force used: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the police officers or others; and whether the suspect actively resisted arrest or attempted to evade arrest by flight. *Graham*, 490 U.S. at 396, 109 S.Ct. 1865; *Smoak v. Hall*, 460 F.3d 768, 783 (6th Cir.2006). These factors are not an exhaustive list, as the ultimate inquiry is "whether the totality of the circumstances justifies a particular sort of seizure." *St. John v. Hickey*, 411 F.3d 762, 771 (6th Cir.2005) (quoting *Graham*, 490 U.S. at 396, 109 S.Ct. 1865).

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham* at 396, 109 S.Ct. 1865. This determination should also be made "in light of the facts and circumstances confronting [the officers], without regard to their underlying intent or motivation." *Id.* at 397, 109 S.Ct. 1865. It is not for the court to substitute its own personal notion of the appropriate procedure for those decisions made by police officers in the face of rapidly changing circumstances. *Smith v. Freland*, 954 F.2d 343, 347 (6th Cir.1992). As the *Smith* Court observed, "[w]hat constitutes 'reasonable' action may seem quite different to someone facing a possible assailant than to someone analyzing the question at leisure." *Id.* "Ultimately, the Fourth Amendment 'reasonableness' test requires a 'careful balancing' of the individual interest in being free from unreasonable seizures and the important governmental interest in protecting the safety of its peace officers and the public." *Williams v. City of Grosse Pointe Park*, 496 F.3d 482 (6th Cir. 2007) citing *Graham* at 396, 109 S.Ct. 1865.

Defendants cite the following facts to support their conclusion that Reynolds posed a threat of serious physical harm to Graham and Clapper and to others:

12

>    1) Reynolds' initial crime was a felony;
>
>    2) Reynolds did not capitulate when confronted by law enforcement, but fought aggressively to avoid arrest, having already fled twice before (by car from 5203 Eagle Road and on foot when the escape vehicle became disabled) and evaded capture for five (5) hours;
>
>    3) Once Dep. Clapper came on the scene, Reynolds was both outsized and outnumbered; however, he continued to fight to escape arrest, suggesting he was not intimidated by the police presence;
>
>    4) In the course of Reynolds' fight to avoid arrest, both Dep. Graham and Dep. Clapper sustained injury, suggesting he was willing to put others' safety at risk to avoid capture;
>
>    5) When the opportunity presented itself, Reynolds fled a third time, on foot, from a public roadway – with a number of cars, drivers and passengers stopped by his altercation with police – toward an area in which there were multiple residences;
>
>    6) Dep. Clapper instructed Reynolds to stop or he would shoot, but Reynolds continued his attempt to flee despite the threatened use of force;
>
>    7) Dep. Clapper fired on Reynolds twice, striking him once, and Reynolds continued to attempt to flee; and
>
>    8) From the time Dep. Clapper arrived on the scene to the time when he called for emergency medical care for Reynolds, exactly one minute and six seconds had elapsed.

ECF Dkt. #32, pp. 214-216.

Defendants contend that the facts in this case are analogous to the facts in *Williams,* supra. In that case, police officers Hoshaw and Miller recovered a stolen vehicle, after Hoshaw blocked the path of the vehicle, while Miller followed the vehicle in hot pursuit. In an effort to avoid capture, Williams, the driver of the stolen vehicle, stopped at the roadblock created by Hoshaw, and put the stolen car in reverse, ultimately crashing into Miller's squad car. After the collision, Hoshaw approached the stolen vehicle, and stuck his gun in the driver's side window in an effort to apprehend Williams. Williams accelerated the stolen vehicle in an effort to escape. In an attempt

13

to navigate around Hoshaw's squad car, Williams drove the stolen vehicle over the curb and onto the sidewalk. Hoshaw, who was holding onto the driver's side door was knocked to the ground as a result of Williams' effort to evade capture. As a consequence, Miller fired several shots as the stolen vehicle sped away. One of the bullets struck Williams in the back of the neck, paralyzing him. The Sixth Circuit, which affirmed the district court's entry of summary judgment on behalf of the police officers, undertook the following analysis pursuant to *Graham*:

> Having reviewed the evidence, we are in agreement with the district court. At the point Miller fired his weapon, he was faced with a difficult choice: (1) use deadly force to apprehend a suspect who had demonstrated a willingness to risk the injury of others in order to escape; or (2) allow Williams to flee, give chase, and take the chance that Williams would further injure Sgt. Hoshaw or an innocent civilian in his efforts to avoid capture. Moreover, Miller had only an instant in which to settle on a course of action. Under the circumstances, we cannot say that Miller acted unreasonably, nor do we believe that a rational juror could conclude otherwise.

The same is true in the case *sub judice*. First, Reynolds was intercepted in the midst of breaking into a residence. He escaped apprehension two times, when Dalton and Shaw were arrested, and briefly five hours later when he broke away from the Sheriff's deputies and was shot.[5] Reynolds was at large for approximately five hours, and Graham was told by a motorist that a man (who Graham believed to be Reynolds) was on State Route 39 attempting to flag down motorists. When Graham apprehended Reynolds, he immediately resisted arrest. During the altercation that ensued, Graham stated that Reynolds reached for Graham's firearm. Clapper stated that Reynolds successfully disarmed Graham and that Graham's gun fell onto the floor. When Reynolds freed himself from Graham and Clapper, he did so by kicking Clapper in the chest. Reynolds ran toward a house set back from the roadway. Both of the Sheriff's deputies stated that a small crowd of people had gathered at the scene to watch the altercation. Therefore, both the bystanders and the

---

[5]There is no evidence that establishes the events that allegedly occurred at 5203 Eagle Road.

14

homeowners were in potential danger. Furthermore, both Graham and Clapper had suffered head injuries as a result of the fight. Like Miller in *Williams*, "[Clapper] was faced with a difficult choice: (1) use deadly force to apprehend a suspect who had demonstrated a willingness to risk the injury of others in order to escape; or (2) allow [Reynolds] to flee, give chase, and take the chance that [Reynolds] would further injure [Graham] or an innocent civilian in his efforts to avoid capture." *Williams,* supra.

Plaintiffs cite Ninth Circuit law for the proposition that if a police officer "intentionally or recklessly provokes a violent confrontation, if the provocation is an independent Fourth Amendment violation, he may be held liable for his otherwise defensive use of deadly force." *Billington v. Smith* 292 F.3d 1177, 1189 (9th Cir.2002). Plaintiff dedicate a considerable amount of their analysis of the third claim in Count One to *Billington*. However, *Billington* was specifically rejected by the Sixth Circuit in *Livermore ex rel Rohm v. Lubelan,* 476 F.3d 397, 406 (6th Cir.2007)("The proper approach under Sixth Circuit precedent is to view excessive force claims in segments," citing *Gaddis v. Redford Twp*., 364 F.3d 763, 772 (6th Cir.2004)). Moreover, Plaintiffs have not offered any evidence establishing their version of the events leading to their respective arrests, and, therefore, the applicability of provocation-of-conflict doctrine articulated in *Billington* to the facts of this case, even if it were controlling law, cannot be determined.

Plaintiff has failed to meet their evidentiary burden on this claim, and, therefore, Defendants' motion for summary judgment on the basis of qualified immunity is granted on the third claim in Count One. Furthermore, because Plaintiffs' have failed to demonstrate a violation of their constitutional rights in the third claim in Count One, their municipal liability claim against the

Sheriff's Department, as it related to the third claim in Count One, must also be dismissed. See *Tucker*, supra.

## IV.    CONCLUSION

Accordingly, Defendants' motion for partial summary judgment is GRANTED with respect to the 42 U.S.C. §1983 claims stated in the first and third claims in Count One and the 42 U.S.C. §1983 municipal liability claims in Count Two as they relate to the first and third claims in Count One.  ECF Dkt. #28.  Therefore, the only remaining claims are the 42 U.S.C. §1983 claim asserted in the second claim in Count One, the 42 U.S.C. §1983 municipal liability claim in Count Two as it relates to the second claim in Count One, Count Three, and Count Four.

**IT IS SO ORDERED.**

Dated: August 11, 2011

*/s/ George J. Limbert*
**GEORGE J. LIMBERT**
**UNITED STATES MAGISTRATE JUDGE**